UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLOW RENOISE STALLING, | No. 2:16-cv-2083 GEB DB P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| DAVID BAUGHMAN, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his 1997 conviction for murder. On screening, the court found that the statute of limitations expired long before petitioner filed this action. (See Aug. 8, 2017 Order (ECF No. 14) at 4.) The court informed petitioner of the legal standards for the statute of limitations and equitable tolling and gave petitioner an opportunity to show why he should be entitled to equitable tolling. (Id.) On September 13, 2017, petitioner filed a response and over 300 pages of psychiatric records. After reviewing those records, and for the reasons set forth below, the court finds petitioner fails to show he is entitled to equitable tolling. The court will recommend dismissal of the petition as untimely.

////

////

1

# BACKGROUND

Petitioner challenges his 1997 conviction for first degree murder. He contends his guilty plea was involuntary. (ECF No. 7.) This court's review of state court records shows that petitioner filed an appeal on March 2, 1998.[1] See People v. Stalling, No. C028822 (Cal. Ct. App., Third App. Dist.). On April 23, 1998, the Court of Appeal dismissed the case as untimely. See id. (citing former Cal. R. Ct. 31(a) (appeal must be taken within 60 days of judgment)). On June 26, 1998, petitioner filed an original habeas corpus petition in the California Supreme Court. See In re Stalling, No. S071493 (Cal. Sup. Ct.). That petition was denied on December 22, 1998. Finally, on March 4, 2004, petitioner filed a habeas corpus petition in the California Court of Appeal. See In re Stalling, No. C046267 (Cal. Ct. App., Third App. Dist.). The Court of Appeal denied that petition on March 25, 2004.

# STATUTE OF LIMITATIONS

## I.     Legal Standards

The habeas statute's one-year statute of limitations provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

////

---

[1] Petitioner's state appellate court records are available at: http://appellatecases.courtinfo.ca.gov/search/searchResults.cfm?dist=3&search=party. His state supreme court record is available at: http://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=1803227&doc_no=S071493. This court may take judicial notice of public records from other courts. Fed. R. Evid. 201.

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Under subsection (d)(1)(A), the limitations period runs from the time a petition for certiorari to the United States Supreme Court was due, or, if one was filed, from the final decision by that court. Lawrence v. Florida, 549 U.S. 327, 339 (2007).

The limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). "The period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled—because it is part of a single round of habeas relief—so long as the filing is timely under California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010) (citing Evans v. Chavis, 546 U.S. 189, 191-93 (2006)); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (within California's state collateral review system, a properly filed petition is considered "pending" under section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time").

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). An extraordinary circumstance must be more than merely "'oversight, miscalculation or negligence on [the petitioner's] part.'" Waldron–Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008)). Rather, petitioner must show that some "external force" "stood in his way." Id. "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the

////

rule." Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011) (citations and internal quotation marks omitted).

**II.     Analysis**

**A.   The Petition was Filed Outside the Limitations Period**

The court found previously that petitioner's 2016 federal petition was filed well outside the one-year statute of limitations. Petitioner's conviction was final in 1997. As described in the court's August 2017 order, even were petitioner to get the benefit of statutory tolling, which appears unlikely, the latest date for filing a petition in this court would have been March 25, 2005, one year after the Court of Appeal's denial of petitioner's habeas corpus petition. (ECF No. 14 at 4.)

The court also notes that a later trigger date for the statute of limitations is possible under 28 U.S.C. § 2244(d)(1)(D). Pursuant to that section, the one-year-limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner claims that his guilty plea was involuntary. He is not asserting newly discovered claims and the later trigger date of subsection (d)(1)(D) does not apply.

Petitioner's federal petition can thus only be deemed timely if the limitations period was equitably tolled for the entire period between March 2005, when, giving petitioner every benefit of the doubt, his petition was due, and September 2016, when he filed the present petition.

**B. Is Petitioner Entitled to Equitable Tolling?**

Petitioner contends he is entitled to equitable tolling because: (1) he was sixteen years old when he was convicted; (2) he did not understand his "case nor the law" for "years;" and (3) he has mental health problems. (ECF No. 15 at 1.)

**1.   Legal Standards**

The Ninth Circuit has made clear that a "pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006); see also Baker v. Cal. Dep't of Corr., 484 F. App'x 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance . . .

4

are not extraordinary circumstances to warrant equitable tolling."). Because a lack of legal knowledge is a circumstance common to many prisoners, it is neither an "extraordinary circumstance" nor an "external force" which would justify equitable tolling.

In addition, low literacy levels are not extraordinary circumstances warranting equitable tolling. See Baker, 484 F. App'x at 131; Payne v. Valenzuela, No. CV 15-3243 FMO (AFM), 2015 WL 9914190, at *5 (C.D. Cal. Dec. 4, 2015), rep. and reco. adopted, 2016 WL 304294 (C.D. Cal. Jan. 25, 2016); Green v. Small, No. CV 10-0139 DOC(JC), 2011 WL 91045, at *2 (C.D. Cal. Jan. 2, 2011) (rejecting petitioner's claim of entitlement to equitable tolling based on pro se status, lack of legal knowledge or sophistication, and illiteracy), rep. and reco. adopted, 2011 WL 91045 (C.D. Cal. Jan. 2, 2011); Stableford v. Martel, No. SA CV 09-1071 JST(RZ), 2010 WL 5392763, at *3 (C.D. Cal. Sept. 14, 2010) (rejecting petitioner's argument that his illiteracy, dyslexia, lack of education, and limited access to "inadequate" prison library were "sufficiently extraordinary to warrant tolling of the limitations period"), rep. and reco. adopted, 2010 WL 5416838 (C.D. Cal. Dec. 20, 2010).

However, a petitioner's mental impairment may provide a basis for equitable tolling. The Ninth Circuit has articulated a specific, two-part test for an equitable tolling claim based on a petitioner's mental impairment:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable to rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills v. Clark, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (citations and footnote omitted; italics in original); see also Orthel v. Yates, 795 F.3d 935, 938 (9th Cir. 2015) ("A petitioner seeking equitable tolling on the grounds of mental incompetence must show extraordinary circumstances,

such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing.").

"The relevant question [is,] '[d]id the mental impairment cause an untimely filing?'" Stancle v. Clay, 692 F.3d 948, 959 (9th Cir. 2012) (quoting Bills, 628 F.3d at 1100 n. 3.) Bills provides further guidance for applying its two-part test:

> [T]o evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Bills, 628 F.3d at 1100–01. "This reiterates the stringency of the overall equitable tolling test: the mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence." Yeh v. Martel, 751 F.3d 1075, 1078 (9th Cir. 2014) (citing Bills, 628 F.3d at 1100).

Thus, the first hurdle under Bills is determining whether petitioner had a "severe mental impairment" that would entitle him to an evidentiary hearing on the equitable tolling issue. This court should order an evidentiary hearing where the "current record 'does not clearly answer' the question of whether . . . extraordinary circumstances caused the untimely filing." Winston v. Myles, No. 2:12-cv-1844-JAD-CWH, 2014 WL 1236546, at *2 (D. Nev. Mar. 25, 2014) (quoting Porter v. Ollison, 620 F.3d 952, 961-62 (9th Cir. 2010)). The district court must take care to ensure that the record regarding the petitioner's mental illness is sufficiently developed to rule on the tolling issue. See Chick v. Chavez, 518 F. App'x 567, 568 (9th Cir. 2013) (remanding "for further development of the record as to [petitioner]'s mental competency and, if necessary, an evidentiary hearing" where record revealed no medical evidence from the time period for which the petitioner sought tolling); Bills, 628 F.3d at 1099–1100 (remanding where the petitioner was in the lowest percentile for verbal IQ, verbal comprehension and working memory, and,

according to clinical psychologists, was incapable of inferential thinking necessary to complete a federal habeas form).

Nevertheless, "[w]here the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010); see also Orthel, 795 F.3d at 939–40. Courts have held that a district court's review of a petitioner's mental health records for the time period in question is sufficient to make that determination. See Roberts, 627 F.3d at 773 (district court's review of the petitioner's "extensive medical records" was an amply developed record upon which district court could find an evidentiary hearing unnecessary); Orthel, 795 F.3d at 939 (When the district court ordered the petitioner's entire medical record to evaluate his mental health, it "demonstrated sensitivity to its obligation to ensure that the record is amply developed, pursuant to *Roberts*, and to make a determination based on the 'totality of the circumstances,' as required by *Bills*."); Taylor v. Filson, 692 F. App'x 821 (9th Cir. June 21, 2017) (district court's review of the petitioner's medical records sufficient to conclude equitable tolling not warranted based on the petitioner's mental health) (citing Orthel, 795 F.3d at 939, and Bills, 628 F.3d at 1100).

**2. Discussion**

This court has reviewed the petitioner's mental health records, which total over 300 pages. (See ECF No. 15 at 2-332.) The records provided primarily reflect petitioner's care between 2003 and 2006. Petitioner also provided records for time periods before and after those years, but they are few. As discussed above, in order to qualify for equitable tolling, petitioner must show that he had a severe mental impairment that made it impossible for him to file a petition and that he was otherwise diligent in pursuing his legal rights for the entire time period from 2005 to 2016. While petitioner did not provide records for that entire time period, he has provided sufficient records for the years 2005 and 2006 to permit the court to determine that petitioner was not so mentally or cognitively disabled during those years that it was impossible for him to pursue his legal remedies. Those records show the following:

7

- Petitioner was diagnosed primarily with schizophrenia, anti-social personality disorder, and depression. (See, e.g., ECF No. 15 at 61.) Petitioner also occasionally reported hallucinations.
- Petitioner dropped out of school, apparently in the 9th grade. (Id. at 12.) It was noted that petitioner felt he required help in reading. (Id. at 122.)
- In 2002, petitioner was tested using the "Clark Adaptive Support Evaluation." He was scored as "DD0," which indicates he was determined not to have a developmental disability that required adaptive support services.[2] (Id. at 132-33.)
- Cognitive testing in late 2004 and in 2005 showed petitioner's cognition to be "fair" or "WNL," within normal limits. (Id. at 31-32, 34, 122.)
- In 2004, petitioner was placed in a mental health crisis bed at least once, apparently due to suicidal ideations. (Id. at 65, 69, 128-31.)
- Petitioner was placed in the mental health care system at the Correctional Clinical Case Management or "CCCMS" level of care during most or all of 2002, 2003, 2005, and 2006. (Id. at 6, 9, 26, 29, 74, 140.) The one record petitioner provides from 2007 also shows him at the CCCMS level of care. (Id. at 143.) Inmates designated to the CCCMS level of care "are those 'whose symptoms are under control or in partial remission'" and can function in the general prison population, administrative segregation, or segregated housing unit. Coleman v. Brown, 28 F. Supp. 3d 1068, 1074 (E.D. Cal. 2014). CCCMS is the lowest level of care for mentally ill inmates. See Steward v. Sherman, No. C 15-667 WHA(PR), 2016 WL 3345308, at *3 (N.D. Cal. June 16, 2016).
- In 2004, petitioner spent some time at the Enhanced Outpatient Program or "EOP" level of care. (Id. at 4, 60.) The EOP level of care is for inmates with "acute onset or significant decompensation of a serious mental disorder." Coleman, 28 F. Supp. 3d at 1076. EOP is the next level of care from CCCMS. Steward, 2016 WL 3345308, at *3.

---

[2] Only prisoners designated as DD1, DD2, or DD3 are considered developmentally disabled and qualify for adaptive support. See Clark v. California, 739 F. Supp. 2d 1168, 1188 (N.D. Cal. 2010).

1  Petitioner was also at the CCCMS level of care during parts of 2004. (Id. at 27, 69.)

- Petitioner was assigned a "GAF" score at many mental health visits. "Global Assessment of Functioning," or "GAF," is a scale that was used by clinicians to assess an individual's overall level of functioning, including the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness.[3]"

- During 2005 and 2006, petitioner's GAF score was between 60 and 65. (Id. at 13, 16, 22, 140, 142.) The few records from 2007 also show a GAF score in the low 60's. (Id. at 143, 147.) A GAF score of 61−70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school function (e.g, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. A GAF of 51−60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers).

- In 2004 during the time petitioner was under suicide watch, his GAF score dropped to a low of 20 on June 26, indicating he was severely impaired, and was 40 on July 6, indicating he had some impairment in reality testing or communication. (Id. at 65, 69.) However, by December 2004, petitioner's GAF score was determined to be 55. (Id. at 70.)

The records provided do not reflect that petitioner was diagnosed with a developmental disability or that he lacked the cognitive ability to understand the need to pursue his legal rights. During the relevant time period, 2005 and 2006, petitioner was never assigned a GAF score lower than 60. While GAF scores are not dispositive, petitioner's consistently moderate GAF scores are not consistent with a finding that he was so impaired by his mental illnesses that he could not

////

////

---

[3] All descriptions of GAF scores come from the Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders with Text Revisions 32 (4th ed. 2004) ("DSM IV−TR").

9

understand the need to seek habeas relief and to take steps to seek such relief.[4]  See Lawrence v. Lizzaraga, No. 2:16-cv-0792 GEB AC P, 2017 WL 495774, at *4 (E.D. Cal. Feb. 7, 2017) (GAF score of 68 means petitioner's "mental faculties were within normal limits" and does not support equitable tolling); Davis v. Malfi, No. CV 06-4744-JVS (JEM), 2015 WL 1383776, at *3 (C.D. Cal. Mar. 20, 2015) (GAF scores between 60 and 70, with two scores of 53 and 55, among the court's reasons for finding no basis for equitable tolling based on mental incompetence); Sigmon v. Kernan, No. CV 06-5807 AHM (JWJ), 2009 WL 1514700, at *9 (C.D. Cal. May 27, 2009) (GAF scores between 55 and 66 "indicate only mild to moderate impairment" and do not provide a basis for equitable tolling); Lawless v. Evans, 545 F. Supp. 2d 1044, 1049 (C.D. Cal. 2008) (GAF score of 65 does not justify claim for equitable tolling due to mental incompetence)

Further, petitioner's treatment at the CCCMS level of care "suggests that petitioner was able to function despite his mental health problems." Washington v. McDonald, No. CV 09-2632-JVS (AJW), 2010 WL 1999469, at *2 (C.D. Cal. Feb. 19, 2010) (citing Coleman, 922 F. Supp. 2d at 903 n. 24), rep. and reco. adopted, 2010 WL 1999465 (C.D. Cal. Feb. 24, 2010). CCCMS is the least restrictive level of mental health care and meant that petitioner was consistently housed in the general population.

Finally, the court notes that petitioner did, in fact, pursue his legal rights shortly after trial. He filed an appeal in 1998 and a habeas petition in the state courts in 1998. Several years later, petitioner filed a second state habeas petition in 2004. This history shows that petitioner has been
////

---

[4] The court recognizes that the American Psychiatric Association discontinued use of the GAF scale. See Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) (GAF scale dropped due to its "conceptual lack of clarity" and "questionable psychometrics in routine practice"). However, the Ninth Circuit has continued to look to the GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 759 F.3d 995, 1003 n. 4 (9th Cir. 2014) (finding in the context of a social security disability appeal that GAF scores are relevant to the disability assessment); see also Dowdy v. Curry, 617 F. App'x 772 (9th Cir. 2015) (GAF score indicating "only moderate symptoms of impairment" did not support equitable tolling). In addition, as shown by the citations in the text, other district courts in this circuit continue to consider GAF scores when determining whether a petitioner's mental state justifies equitable tolling.

aware of the need to pursue legal claims relating to his conviction long before he filed the present action.

This is not a case like that considered by the Ninth Circuit in Forbess v. Franke, 749 F.3d 837 (9th Cir. 2014). In that case, the prisoner had persistent delusions that he was working for the FBI. His delusions were documented by various doctors and they were elaborate. He explained that his delusions caused him to believe he had no need to file a federal habeas petition because his work for the FBI would result in his release. 749 F.3d at 839. Petitioner in the present case had neither consistent delusions nor delusions that appeared to affect his thinking about his legal status.

In cases like the present one, where a petitioner had mental health problems but had cognitive abilities within normal ranges, the Ninth Circuit has held equitable tolling is not warranted. In Roberts v. Marshall, 627 F.3d 768, 770 (9th Cir. 2010), the court declined equitable tolling because the petitioner's mental health records showed that he was medicated for severe psychotic depression disorder, but he had normal mental functions, his appearance, behavior, mood, speech, appetite, sleep and affect were within normal limits, he was not delusional, and had normal insight and judgment. In Orthel v. Yates, 795 F.3d 935, 941 (9th Cir. 2015), the Ninth Circuit affirmed the dismissal of a petition where substantial evidence showed that, despite fluctuations in mental health, the petitioner possessed sufficient competence and capability in the year following the date on which the state court judgment became final as well as sufficient competence during much of the eleven-year span between finality of judgment and filing of his federal petition.

The records provided do not reflect that petitioner had a mental impairment so severe that he was unable to rationally or factually understand the need to timely file a petition or that he was rendered unable to file a petition. Rather, the records show that petitioner's functional impairment was moderate, at most, and his cognition was intact throughout 2005 and 2006. Based on the court's review of petitioner's mental health records, and based on this district court's limited resources and time, this court does not find an evidentiary hearing is required to make a determination of petitioner's mental competence. The existing record is sufficient to

conclude that petitioner had the mental capacity to understand the need to timely file a petition and to effectuate its filing in 2005 and 2006.

Finally, even if petitioner satisfied the first prong of the Bills test (which he has not), equitable tolling would not be warranted because petitioner has not shown that he was diligent in pursuing his claims "to the extent that he could understand them, but that [his] mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." Bills, 628 F.3d at 1100. Petitioner has not alleged any specific facts showing that he attempted, between 2005 and 2016, to obtain assistance in order to file a timely petition or that his mental impairment prevented him from locating assistance or from understanding any assistance that he had obtained. Id. at 1100-01; see also Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002) (equitable tolling determinations "turn[] on an examination of detailed facts"). Petitioner's simple statement that it took him years to understand his legal rights is not sufficiently specific to demonstrate diligence.

## CONCLUSION

This court finds petitioner is not entitled to equitable tolling based on his ignorance of the law, cognitive abilities, or mental health. Therefore, the petition is untimely under 28 U.S.C. § 2244(d)(1) and IT IS HEREBY RECOMMENDED that the petition be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In the objections, the party may address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the

////

district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 9, 2018

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-habeas/stal2083.eq toll